UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

RECLAMATION DISTRICT NO. 2116,
and WILLIAM P. DePAOLI

        Plaintiffs,

   v.

ARCADY OIL COMPANY, et al.,

        Defendants.
_____\

AND RELATED COUNTERCLAIMS AND
CROSS-CLAIMS

NO. CIV. S-96-1473 FCD/JFM

MEMORANDUM AND ORDER

----oo0oo----

This matter comes before the court on two motions to dismiss for failure to prosecute under Federal Rule of Civil Procedure 41(b) ("Rule 41(b)") brought by (1) defendants Hess Corp., ASTA Construction Co., Inc., Delta Oilfield Services, Inc., OXY USA Inc., Hamilton Brothers Corp., Occidental Petroleum Corp., Western Continental Operating Co., Venturini Associates, Inc., Atlantic Richfield Co., CMS Nomeco Oil & Gas Co., BP America

Production Co., Atlantic Oil Co., Castle Minerals, Chevron U.S.A., Cleveland Drilling, Inc., ConocoPhillips Co., Pacific Gas & Electric Co., EnCana Corp., A.M. Stephens Construction Co., Inc., Marathon Oil Co., and Union Oil Co. of California (Docket #337) and (2) defendants Hexadyne Energy Corp. and Hexadyne Drilling Corp. (Docket #314) (collectively, "Moving Defendants").[1]

Alternatively, some of the Moving Defendants move to dismiss plaintiffs Reclamation District No. 2116 ("Reclamation District") and William P. DePaoli's ("DePaoli") (collectively, "plaintiffs") action against them on the ground that the complaint is barred by the doctrine of laches.[2]  The issue of laches, however, is not properly before the court on a motion under Rule 41(b), and therefore, the court does not consider the issue herein. Assuming Moving Defendants have raised the affirmative defense of laches in their respective answers, the proper procedure to raise this defense is through a motion for summary judgment, not by way of the instant motion.  Fed. R. Civ. P. 56.  Accordingly, the court confines its decision to the issue of whether plaintiffs' action against Moving Defendants should be dismissed for failure to prosecute.

For the reasons set forth below, the court finds that plaintiffs have not unduly delayed prosecuting this action, and that any delay attributable to plaintiffs did not cause Moving

---

[1] Defendants Warren E. Gomes Excavating, Inc. and W. F. Landi Co. join in the motions (Docket #339 ).

[2] See Corrected Motion to Dismiss, filed Sept. 27, 2006 (Docket #337).

2

Defendants actual prejudice. Therefore, Moving Defendants' motions to dismiss under Rule 41(b) are DENIED.[3]

**BACKGROUND**

The real property at issue is a 3.5-acre parcel of land located within the San Joaquin Delta region ("Arcady Dumpsite"). (Corrected Mot. to Dismiss, filed Sept. 27, 2006 ["Mot'n"], at 1:11-15.) In April 1960, the California Regional Water Quality Control Board-Central Valley Region ("RWQCB") authorized Arcady Oil Co. to use the Arcady Dumpsite, as well as other contiguous real property, as a non-hazardous waste disposal facility. (Id. at 1:26-2:11.) In January 1970, the San Joaquin County Planning Department approved the site for the dumping of "drilling mud," which consists of residual material from the installation of oil and natural gas production wells and other exploration-related activities. (Id. at 2:1-11.)

DePaoli purchased the Arcady Dumpsite, as well as other contiguous property, in June 1979 from Arcady Oil Co. (Id. at 4:7-9.) Arcady Oil Co. paid DePaoli a rental fee to continue to use the site as a waste disposal facility. (Id. at 4:11-15.) In addition to Arcady Oil Co., Moving Defendants also disposed of drilling mud and cuttings from 1983 to 1984. (Id. at 5:9-11.)

In April 1983, the San Joaquin County Board of Supervisors ("Board") granted DePaoli's application for the formation of Reclamation District No. 2116 (the real property composed of the

---

[3] Because oral argument will not be of material assistance, the court orders these matters submitted on the briefs. E.D. Cal. L.R. 78-230(h).

3

Arcady Dumpsite and other contiguous land owned by DePaoli). (Id. at 4:19-23.)

In October 1984, the RWQCB issued a Cleanup and Abatement Order for the Arcady Dumpsite. (Id. at 5:1-2.) Subsequently, the site was closed for cleanup pursuant to the order. (Id. at 6: 4-7.)

In 1993, DePaoli's counsel wrote to many of the Moving Defendants seeking financial assistance to resolve remaining contamination problems with the dumpsite. (Id. at 7:5-12.) After receiving sporadic, non-committal responses from Moving Defendants, plaintiffs filed this action in 1996 and filed an amended complaint in 1997. (Id. at 7:15-18.) Plaintiffs, *inter alia*, claim that Moving Defendants disposed of drilling mud at the Arcady Dumpsite, causing and contributing to the presence of solid and/or hazardous waste which may pose imminent and substantial endangerment to health and the environment in violation of the Resource Conservation and Recovery Act's citizen provision (42 U.S.C. § 6972). (Opp'n, filed Oct. 12, 2006, at 3:13-17.)

From 1997 to 1999, many of the parties jointly undertook limited site characterization work to investigate possible cleanup alternatives in place of litigation. (Mot'n at 7:19-21.) This investigation ceased in 2000. (Id.) In April 2001, defendant Pacific Gas & Electric ("PG&E") filed a Notice of Filing a Voluntary Petition under Chapter 11/Bankruptcy and Imposition of Automatic Stay. (Id. at 7:24-27.) Based on said Notice, on May 4, 2001, the court administratively closed the case and informed the parties that the case could be re-opened at

4

the parties' request.  The automatic stay in the PG&E bankruptcy case was terminated on April 12, 2004.

Plaintiffs moved to re-open this case on April 12, 2006. (Notice of Termination of Automatic Stay and Request to Re-open Action, filed Apr. 12, 2006 ["Notice to Re-open Action"].) Plaintiffs assert that they did not move to re-open the case until April 2006 due to profound changes in the DePaoli family. (Opp'n at 3:23-4:12.)  Upon DePaoli's death in July 1999, Avon DePaoli ("Avon"), DePaoli's widow, became sole owner of the Arcady Dumpsite and principle of the Reclamation District. (Id. at 3:24-25.)  In late 2001, Avon suffered a debilitating stroke and presently remains under full-time nursing care. (Id. at 26-27.)  Upon her incapacitation, the DePaoli's eldest daughter, Devon DePaoli ("Devon"), assumed control of the family's affairs based on a Power of Attorney. (Id. at 4:1-2.)

Until earlier this year, plaintiffs assert that Devon was cautious about disrupting the status quo with regard to the Arcady Dumpsite. (Id. at 4:2-4.)  In particular, the DePaoli family leases land contiguous to the Arcady Dumpsite for commercial and industrial purposes. (Id. at 4:4-5.)  These leaseholds are used to help offset the cost of Avon's healthcare, and as such, Devon was concerned that a shift in regulatory or litigation status could disrupt the necessary income flow. (Id. at 4:5-7.)  Devon substantially concluded the renegotiation of the leaseholds earlier this year and now desires to bring finality to the instant action. (Id. at 4:9-12.)

The procedural history of this case spans the past 10 years. Plaintiffs filed their complaint in August 1996, followed by

their First Amended Complaint in January 1997. (Pls.' Compl., filed Aug. 14, 1996; Pls.' First Am. Compl., filed Jan. 17, 1997.) Subsequently, in February 1997, United States District Judge Lawrence Karlton, the district court judge initially assigned to this case, held a scheduling conference. (Status Order, filed Feb. 26, 1997.) Following the scheduling conference, discovery was stayed and a settlement conference was scheduled; the settlement conference was assigned to Magistrate Judge John Moulds. (Id.) In January 1998, the case was re-assigned to the undersigned judge. (Order for Case Reassignment, filed Jan. 1, 1998.)

Between January 1998 and May 2001, the following court activity took place: in February 1998, the court entered default judgment against defendant Arcady Oil Co.; in July 1998, Magistrate Judge Moulds held a settlement conference (although a full mutual agreement was not ultimately reached); in April 2001, defendant PG&E filed a notice of bankruptcy; and, as a result of the PG&E bankruptcy, in May 2001, the court administratively closed the case. Following the termination of the PG&E automatic stay in April 2004, plaintiffs moved to re-open the case on April 12, 2006. (Notice to Re-open Action.)

Moving Defendants now move to dismiss this action on the ground plaintiffs have failed to prosecute it.

**STANDARD**

Rule 41(b) authorizes district courts to dismiss an action for failure to prosecute. See Fed. R. Civ. P. 41(b). However, before imposing the extreme sanction of involuntary dismissal, the court must examine the following factors: (1) the public's

6

interest in the expeditious disposition of cases; (2) the court's docket concerns; (3) the risk of prejudice to the defendant; (4) the judicial policy favoring disposition of cases on the merits; and, (5) the availability of a less drastic sanction. See Yourish v. Calif. Amplifier, 191 F.3d 983, 990 (9th Cir. 1999); see also In re Eisen, 31 F.3d 1447, 1451 (9th Cir. 1994).

Because dismissal is a harsh penalty, it should be imposed as a sanction only in extreme circumstances. See Thompson v. Housing Authority, 782 F.2d 829, 831 (9th Cir. 1986).

**ANALYSIS**

Preliminarily, the court must determine the relevant time period for which plaintiffs may be charged with delay. Moving Defendants contend that the relevant delay period is from May 2001 to April 2006, the timeframe between the administrative closure of the case and plaintiffs' motion to re-open the case. (Mot'n at 14:1-15:14.) Plaintiffs argue that Moving Defendants exaggerate the period of delay, if any, attributable to them and that if plaintiffs did delay, their delay was not unreasonable or frivolous and in no way prejudiced Moving Defendants. (Opp'n at 6:13-14.)

In view of the procedural posture of the case, the court finds the relevant delay period to be between April 12, 2004, the termination of the automatic stay in the PG&E bankruptcy proceedings, and April 12, 2006, plaintiffs' motion to re-open the case. For purposes of Rule 41(b), the court does not find the relevant delay period to encompass the May 2001-April 2004 timeframe because the case was closed *by the court* during this period due to the PG&E bankruptcy. Despite the court's

7

permission in its May 2001 notice of administrative closure, *no* party moved to re-open the case during this time. Plaintiffs therefore cannot reasonably be charged with this period of inaction.

However, with respect to the timeframe between April 2004 and April 2006, plaintiffs concededly did not litigate this matter. They maintain that they encountered issues concerning changes in the DePaoli family during this time, which precluded them from re-opening the case until April 2006. Under Rule 41(b), the court must balance plaintiffs' reasons for their inaction against the alleged harm to Moving Defendants.

In that regard, the first factor of the Rule 41(b) analysis weighs in favor of dismissal because "the public's interest in expeditious resolution of litigation always favors dismissal." Yourish, 191 F.3d at 990. As a result of plaintiffs' financial situation between the PG&E bankruptcy and the motion to re-open, litigation was delayed for two years. This counters the public's interest in the expeditious resolution of cases.

Under the second factor, the trial judge is in the best position to assess whether the delay in a particular case interfered with docket management. Pagtalunan v. Galaza, 291 F.3d 639, 642 (9th Cir. 2002). Here, the court has not issued a scheduling order in the case, and thus, plaintiffs' delay has not, *per se*, interfered with the court's docket management or caused congestion in the court's calendar. Cf. Link v. Wabash R. Co., 370 U.S. 626, 629-30 (1962)(finding dismissal appropriate "to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts").

8

It is noteworthy that, while this case has been pending for 10 years, the progress of the litigation has been limited to the filing of pleadings, a default judgment against defendant Arcady Oil Co., settlement negotiations, and an administrative closure of the case due a party's bankruptcy proceedings. The court is cognizant of the fact that litigation of this type may be protracted due to its complex nature--this case raises significant environmental issues involving over 30 defendants. The court therefore does not find the pace of this litigation to have interfered with its docket management, and as such, the second factor does not favor dismissal.

Under the third factor, defendants have the burden of proving that the risk of prejudice to them, as a result of plaintiffs' delay, impaired their "ability to proceed to trial." Malone v. United States Postal Serv., 833 F.2d 128, 131 (9th Cir. 1987); See also Chism v. Nat'l Life Insurance Co., 637 F.2d 1328, 1331 (9th Cir. 1981). Plaintiffs, however, have the initial burden of providing a non-frivolous excuse for their delay before the burden shifts to Moving Defendants to show actual prejudice. In re Eisen, 31 F.3d 1447, 1453 (9th Cir. 1994). Accordingly, the court considers plaintiffs' delay and Moving Defendants' prejudice together to determine "whether there has been sufficient delay or prejudice to justify a dismissal of the plaintiff[s'] case." Nealy v. Transportacion Maritima Mexicana, S.A., 662 F.2d 1275, 1281 (9th Cir. 1980).

Plaintiffs re-opened the instant action after Devon concluded renegotiations on certain leases of real property in early 2006, which secured the income to pay for Avon's healthcare

9

1  expenses.  (Opp'n at 4:9-12.)  Under the circumstances, the court
2  does not find the reason for plaintiffs' delay in the prosecution
3  of the instant action to be frivolous.  Therefore, plaintiffs
4  have met their initial burden of providing a non-frivolous excuse
5  for their delay, thus triggering Moving Defendants' obligation to
6  come forth with evidence of actual prejudice.

7       Moving Defendants fail to do so.  "Prejudice itself usually
8  takes two forms--loss of evidence and loss of memory by a
9  witness."  Nealy, 662 F.2d at 1281.  Although Moving Defendants
10 assert that the passage of time has diminished their witnesses'
11 memory, Moving Defendants do not persuade the court that they
12 have suffered actual prejudice that would impair their "ability
13 to proceed to trial."  Malone, 833 F.2d at 131.

14      Moving Defendants assert that many defendant corporations
15 have changed hands and individual defendants have passed away
16 such that they cannot adequately defend this matter.  (Mot'n at
17 14:19-27.)  However, the evidence indicates that many individual
18 defendants passed away during the early stages of this
19 litigation--outside the window of the relevant delay period--such
20 that the subject two-year delay did not interfere with Moving
21 Defendants' ability to proceed to trial.  For example, Alex
22 Diepenbrock, principal of defendant Arcady Oil Co. died before
23 the commencement of this action.  (Opp'n at 7:3-4.)  Chester
24 Dolley, owner and manager of defendant Atlantic Oil Co. passed
25 away on April 15, 1988, 15 months after plaintiffs filed their
26 first amended complaint.  (Id. at 7:10.)  George LaPerle,
27 principal of defendant Western Continental Operating Co., passed
28 away in December 2000.  (Id. at 7:10-11.)  The deaths of these

witnesses occurred much before the relevant time period for dismissal under Rule 41(b)--between April 2004 and April 2006.

In addition, Moving Defendants also assert that records needed to defend this matter no longer exist. (Mot'n at 14:25-26.) However, similar to above, Moving Defendants refer to records that were either lost or not in existence prior to the relevant Rule 41(b) delay period. (Id.) Since Moving Defendants do not proffer evidence of actual prejudice during the relevant time period, the court finds that plaintiffs' two-year delay did not interfere with Moving Defendants' ability to defend this action.

In sum, plaintiffs have provided a non-frivolous excuse for their delay in prosecuting this action and Moving Defendants have not persuaded the court that they suffered actual prejudice due to the delay. The third factor therefore does not weigh in favor of dismissal. See Nealy, 662 F.2d 1275 (citation omitted) (stating that even "[a] weak excuse may suffice if there has been no prejudice").

The court weighs the fourth factor, the disposition of cases on their merits, against plaintiffs' delay and the prejudice suffered by defendants. In re Eisen, 31 F.3d at 1454. As discussed above, the court finds plaintiffs' excuse for their delay to be non-frivolous and that Moving Defendants did not suffer actual prejudice sufficient to warrant dismissal. In addition, "public policy favors disposition of cases on the merits." Pagtalunan, 291 F.3d at 643. Therefore, the fourth factor does not favor dismissal.

11

Lastly, the fifth factor does not favor dismissal because in view of the lack of actual prejudice to Moving Defendants, as described above, the court does not find that dismissal is proper in this case. Moving Defendants concede that no less drastic alternatives are available, short of dismissal, because evidence and witnesses are no longer available. (Mot'n at 15:16-20.) Moving Defendants, however, fail to proffer evidence supporting their assertions that the unavailability of the subject evidence and witnesses was a result of plaintiffs' delay during the *relevant* time period.

## CONCLUSION

For the foregoing reasons, Moving Defendants' motions to dismiss for failure to prosecute are DENIED. The court sets the matter for a pre-trial scheduling conference on December 15, 2006 at 10:00 a.m. The parties shall file a joint status report on or before December 5, 2006.

IT IS SO ORDERED.

DATED: November 15, 2006.

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE